Martha Ann MICHEL, Petitioner–
Appellant,

v.

Mark Christopher MICHEL,
Respondent–Respondent.

No. 17751.

Missouri Court of Appeals,
Southern District,
Division Two.

June 12, 1992.

Motion for Rehearing or Transfer to
Supreme Court denied
July 6, 1992.

C.H. Parsons, Jr., Joe Z. Satterfield, Parsons, Mitchell, Wilson & Satterfield, P.C., Dexter, for petitioner-appellant.

Stephen E. Walsh, Summers, Walsh, Pritchett and Blaich, P.C., Poplar Bluff, for respondent-respondent.

MAUS, Judge.

In dissolving the marriage of petitioner Martha Ann Michel (Wife) and respondent Mark Christopher Michel (Husband), the trial court took the following action. It placed primary custody of the two children with Wife, but denied her request to move them to Alabama. It granted Husband specific periods of temporary custody and reasonable visitation. It did not require Husband to provide health insurance coverage for the children. It awarded Wife $310.00 per month, per child, for child support. It distributed the marital property. In her appeal, Wife contends the trial court erred in each of those facets of the decree. The following is an outline of the basic facts. Additional evidence will be noted as necessary for the consideration of Wife's points on appeal.

At the time of their marriage on January 29, 1983, Husband was approximately 26 years of age. He had 275 college hours in various fields but no degree. Wife was approximately 24 years of age. She had an Associate Degree in Occupational Therapy. The parties met in Memphis, Tennessee where they had been employed. Husband had worked at Bock Pharmacal, but was a student when they met. Wife worked as an occupational therapist.

After the marriage the parties moved to Poplar Bluff, Husband's family home. He is employed in the Snap Shot one-hour photo business owned by his father. The father also owns and operates a drugstore. There are photo shops in Poplar Bluff, Cape Girardeau, Missouri and Murray, Kentucky. Husband is the general manager of the business. His salary is $1,000.00 each two weeks. He was paid a bonus of $8,251.00 for 1989 and $5,661.36 for 1990. The business was losing money in 1991. Husband did not expect a bonus for that year.

In Poplar Bluff, Wife was employed as an occupational therapy assistant. Her salary varied. In 1990 she earned $15,508.00. At the time of trial, she had temporary employment in her profession. She was paid $12.50 per hour.

The parties had two children. Anthony D. Michel was born on June 27, 1985. Matthew C. Michel was born on July 1, 1988. The parties separated in June 1990. Wife attributes the breakup of the marriage to

the fact Husband was seldom at home, inattention to the family and his involvement with Melissa, the manager of the Poplar Bluff shop. Wife's testimony included the following.

"A. The boys and I had made cookies and Chris was working on a Sunday, and we decided we'd go down there and bring cookies. And I knocked on the door, we banged on the door, and he finally came—Five minutes I must have waited, and he came to the door. His shirt [had] mismatched buttons and Melissa followed him out, and their faces were flushed and they had a hard time speaking to me.

Q. Did you notice anything else about their appearance? Their hair.

A. Their hair was disarrayed."

Husband testified that his work demanded his time, he participated in the boys' activities and he became romantically involved with Melissa only after the separation. He did not deny or explain the cookie incident.

As stated, the decree of dissolution placed the two children in the primary custody of Wife and granted Husband temporary custody on alternate weekends from 6 p.m. Friday until 6 p.m. Sunday; on alternate Wednesday's after school or 5 p.m. to 8 a.m. Thursday morning; the last two full weeks of each June and the first two full weeks of each August; and for designated holiday periods. It further provided: "In addition, the Respondent shall be able to see the children at all other reasonable and proper times upon proper notice."

Wife's first point is that the trial court erred in refusing to allow her to change the residence of the minor children to the vicinity of Birmingham, Alabama. Her second point is that the trial court erred in awarding temporary custody of the parties' two minor children on alternate Wednesdays and visitation at all other reasonable times upon notice because such order effectively prevented Wife and the children from relocating within the state of Missouri. These two points are obviously interrelated. Each has to do with the restriction of the place of residence of Wife as a custodial parent.

Wife argues that her points have merit because of the following evidence. She wishes to obtain a bachelor of science degree as an occupational therapist. She had lived and her parents live in Birmingham, Alabama. She had been offered a job at a hospital in Birmingham as a certified occupational therapy assistant with a starting salary of $26,000.00 per year. She would also receive substantial fringe benefits, including medical and dental coverage for herself and the children for $87.00 per month. The hospital would cooperate in permitting the wife to attend the University of Alabama–Birmingham where she could obtain her desired degree. The cooperation also would include $1,000.00 per year toward her educational expenses. After obtaining her degree, she would be paid $36,000.00 per year.

She had arranged to rent a large apartment in an affluent suburb of Birmingham. The apartment complex has a swimming pool, playground and clubhouse for the children. She had made arrangements for Anthony to attend school and Matthew to attend preschool at a day care facility. Wife's parents live in that area. Her parents love the children and the children are affectionate with them. Her parents are willing and desire to assist Wife in caring for the children, when needed, and to help financially. She needs the additional degree and increased salary to be able to provide for the needs of the children, as she anticipates the Husband may be unable to do so. Since the separation the husband paid child support only when and as ordered by the court. She cites evidence of Husband's financial irresponsibility including the following. He purchased on credit a used Rolex wrist watch for $6,000.00. He purchased a one-third interest in a boat and motor for $4,000.00. She also points out that she can obtain the desired degree in Missouri only in Columbia or St. Louis. To her knowledge, the only available employment as an occupational therapist assistant in Missouri, paying $26,000.00 per year, is in Kansas City. From Poplar Bluff it is 380 miles to Birmingham and 360 miles

to Kansas City. She argues the decree, in effect, improperly limits her place of residence to Poplar Bluff.

Husband counters by emphasizing the following evidence. His father and mother live in Poplar Bluff. They love and have a close relationship with the children. He has two brothers who also live in Poplar Bluff. One of the brothers has two daughters, ages 14 and 10. The Michel family, including the children, is a close-knit group and engage in many family activities. The parties' children are active in Church and Sunday school in Poplar Bluff. They engage in sports activities such as soccer and swimming teams. Since the separation, the children have adjusted to the custodial arrangements and frequent visitation with their father. He argues that to move the children 380 miles from the community they have known all their lives would be emotionally traumatic. His testimony included the following:

"Q. Why is it in the best interest of the children that custody be placed with you in your opinion?

A. Because the children need to remain with their environment that they've established here. It's very important. They have a large extended family they love very much. They need access to both sides of the family, both Martha's side of the family and to my side of the family."

It is trite to observe the place of residence of a custodial parent is an important consideration in determining "custody in accordance with the best interests of the child". § 452.375. That importance is implicitly recognized in the following statutory factors:

"(3) The interaction and interrelationship of the child with his parents, his siblings, and any other person who may significantly affect the child's best interests;

(4) The child's adjustment to his home, school, and community;

.    .    .    .    .

(6) The needs of a child for a continuing relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;". § 452.375.

However, these are not the only factors to be considered. The courts are enjoined to consider "all relevant factors". § 452.375. It is impossible to enumerate or categorize all of the nonstatutory factors relating to the place of residence of a custodial parent. The consideration of the relevant factors certainly include a comparison of the geographical, material and social aspects of the alternative places of residence. More importantly, it must include a comparison of all aspects of the alternative custody offered by each parent.

A statute provides that a custodial parent shall not change the residence of a child to another state or remove a child from this state for a period of time exceeding ninety days except upon order of the court or with the written consent of the parties with custody or visitation rights. § 452.377. Violation of a court order under that section may be considered a change of circumstance under § 452.410. A separate statute provides that if either parent of the child changes his residence to another state, such a change of residence shall be considered a change of circumstances under § 452.410. § 452.411.

However, it is established that the right of a custodial parent to change a place of residence is not, by those statutes, totally insubordinate to the wishes of the other parent irrespective of the other relevant factors.

"In our highly mobile society, it is unrealistic to inflexibly confine a custodial parent to a fixed geographical area, if removal to another area for reasons such as change of employment, remarriage, etc., is consistent with the best interest of the minor children." *In re Marriage of Greene*, 711 S.W.2d 557, 564 (Mo.App. 1986).

A court cannot restrict the mobility of a custodial parent by providing to the other an additional day of custody per week upon 48 hours' notice. *Koenig v. Koenig*, 782 S.W.2d 86 (Mo.App.1989).

Nor may a decree of custody provide for an automatic transfer of custody upon a change of residence by the custodial parent. *In re Marriage of Dusing*, 654 S.W.2d 938 (Mo.App.1983). The request of a noncustodial father for a restriction that neither parent move from a two-county area is properly denied. *Kline v. Kline*, 686 S.W.2d 13 (Mo.App.1984). A clause in a separation agreement restricting the residence of children to a two-county area had no legal effect. *In re Marriage of Greene*, supra.

■ Four factors have been recognized as particularly relevant in determining the propriety of a relocation by a custodial parent.

"(1) [T]he prospective advantages of the move in improving the general quality of life for the custodial parent and child, (2) the integrity of the custodial parent's motives in relocating (whether primarily to defeat or frustrate visitation and whether the custodial parent is likely to comply with substitute visitation orders), (3) the integrity of the noncustodial parent's motives for opposing relocation and the extent to which it is intended to secure a financial advantage with respect to continuing child support, and (4) the realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is permitted." Haralambie, *Handling Child Custody Cases*, § 7.08 (1983).

Those four factors have been inherently recognized in this state.

"The removal of a child to another state has been the subject of many decisions. Generally, such a removal is not favored when the practical effect of that removal will be to deprive the child of desirable contact with the noncustodial parent. *Pelts v. Pelts*, 425 S.W.2d 269 (Mo.App.1968). However, such removal is not per se cause for modification. *K___ R___ (S___) D___ v. C___ D___ S___*, 646 S.W.2d 428 (Mo.App.1983). It is one very important factor in determining if such a change in circumstances has

occurred to cause modification of the custodial decree to be in the best interests of the child. § 452.410; *In re Marriage of Griswold*, 623 S.W.2d 560 (Mo.App.1981); *Knoblauch v. Jones*, 613 S.W.2d 161 (Mo.App.1981). 'Jurisdictional problems and visitation privileges of a noncustodial parent are not insuperable obstacles when removal of a minor child to another state is at issue.... In our highly mobile society it would be unrealistic to inflexibly confine a custodial parent to a fixed geographical area if removal to another jurisdiction was consistent with the best interests of the minor child.' *In re Marriage of Bard*, 603 S.W.2d 108, 109 (Mo.App.1980). Factors to be included in a consideration of such modification have been discussed in many decisions. *Pender v. Pender*, 598 S.W.2d 554 (Mo.App. 1980); *Girvin v. Girvin*, 471 S.W.2d 683 (Mo.App.1971). Similar factors would apply to a removal from southeast Missouri to Louisiana as apply to a removal from southeast Missouri to southwest Missouri. *Elfrink v. Elfrink* [620 S.W.2d 386 (Mo.App.1981)], supra." *In re Marriage of Dusing* at 942. (Omission in original.)

Wife cites and relies upon such cases as *Warrington v. Warrington*, 684 S.W.2d 368 (Mo.App.1984) and *Flaton v. Flaton*, 777 S.W.2d 948 (Mo.App.1989). In *Warrington*, the custodial mother was remarried to a medical doctor. The doctor had accepted a responsible teaching position in California. There was evidence he would provide a stable environment for the mother and the children. The opinion provides but little information concerning the father's relationship with those children. The judgment granting the father custody was reversed and an order entered that the mother be permitted to move with the children to California. The case was remanded for fixing visitation provisions and determining who should bear the cost of transportation therefor.

In *Flaton*, the father notified the custodial mother he lost his job, could have trouble in paying child support and lost his health insurance benefits for the children.

The mother, who lived in the St. Louis area, looked for a better job as a speech pathologist. She found such a job in Parsons, Kansas. The new job paid $5,000.00 more per year, provided health insurance for her and the children and gave her an opportunity to attend Kansas University at no cost to obtain a doctorate in speech pathology. In affirming the order of the trial court granting the requested permission, the court stated:

> "Suffice it to say that where the custodial parent, who has exercised the right of custody and control in a manner conducive to the welfare and development of the children, demonstrates a need to move from the state in order to achieve employment and financial betterment which will subserve the best interest of the children, judicial permission to remove the children is warranted." *Flaton* at 950.

*In re Marriage of Cornish*, 780 S.W.2d 62 (Mo.App.1989), is a remarkably similar case in which the court held:

> "Past custody of a child by the moving party and the need of the parent to move from the state are sufficient facts, if proved, to warrant permission to remove a child from the jurisdiction." *Id.* at 64.

Also see *Simpher v. Simpher*, 770 S.W.2d 488 (Mo.App.1989); *In re Marriage of Dusing*, supra; *Elfrink v. Elfrink*, 620 S.W.2d 386 (Mo.App.1981); *In re Marriage of Turner*, 764 S.W.2d 160 (Mo.App.1989).

In opposition, Husband cites and relies upon cases such as *Samuels v. Samuels*, 713 S.W.2d 865 (Mo.App.1986) and *Tucker v. Tucker*, 778 S.W.2d 309 (Mo.App.1989). In *Samuels*, a mother, because of economic necessity, moved with her children to New York to live with her sister. She applied for but did not obtain employment. After six months, she returned to Missouri. In a dissolution action in Missouri, the trial court denied her permission to move the residence of the children to New York. The trial court found her plans too speculative to provide a basis for such a move.

In *Tucker*, at 312, the trial court awarded the mother custody of two children but denied her request to move to Texas. The mother argued "that moving to Texas would be in the best interest of the children because she has better employment opportunities in Texas, both she and respondent are from Texas and have several family members there and respondent's visitation rights would not be unduly inconvenienced." The trial court's denial of the request was affirmed.

This case is not to be resolved on the issue of credibility. The critical evidence is undisputed. The cases Husband relies upon may be distinguished. In both *Samuels* and *Tucker*, the custodial parent did not demonstrate a need that could not be met in the home community and had made no definite plans for employment or living arrangements in the event permission was granted to move from the state.

The motive of Wife in moving to Birmingham is not to defeat the children's relationship with their father. She recognizes the desirability of their association with their father and his family. She believes the father should be granted periods of temporary custody and such visitation as is practicable. She has demonstrated a basis for her belief that she must strengthen her ability to economically provide for the children. She has made definite arrangements by which she can do so. She has also made definite and satisfactory arrangements for a new place of residence in a socially desirable community. The maternal grandparents are available to provide support and affection for the children.

There is nothing in the record to indicate that the mother is not a fit custodian of the children. Husband admits she is "an adequate care giver". He acknowledges Wife's parents are nice and love the children. He did ask for custody of the children. But, he presented no evidence concerning the circumstances under which they would live. There was no evidence of what arrangements he would make for their care and education. He does not appeal from the denial of his request for custody. As he stated, "I asked for custody because the children need to remain with their environment that they've established *here*". (Emphasis added.) The de-

cree of the trial court requires Wife as custodial parent to do so. In that decree it has misapplied the law in restricting the place of residence of Wife and the children in her custody. Wife has demonstrated a need to move from the State to "achieve employment and financial betterment which will subserve the best interest of the children." *Flaton* at 950. The trial court erred in denying Wife's request to move the place of residence of the children to the vicinity of Birmingham, Alabama.

■ Wife's third point is that the trial court erred in not requiring Husband to continue health insurance coverage on the children because such coverage was available to Husband through his employer at no cost to Husband. She argues that § 452.353.1 authorized the trial court to make such an order and that since such coverage was available without cost to Husband, the trial court abused its discretion in not entering such an order. There was evidence Husband's employer was losing money. Husband's salary had been reduced. To support her request to move to the Birmingham area, Wife cited the availability of health and dental insurance for her and the children for $87.00 per month. She testified she was going to obtain that insurance irrespective of the coverage through Husband's employer. Wife's success on her first point establishes that this point should be denied.

Wife's fourth point is that the trial court "erred in awarding an amount of child support that was less than the amount calculated pursuant to Supreme Court Rule 88.01 and Civil Procedure Form 14 because there was no finding on the record that the presumed amount was, after considering all relevant factors, unjust or inappropriate." Husband submitted Form 14 showing Wife's monthly gross income to be $2,167.00 and that of Husband to be $2,333.00. Wife submitted Form 14 showing her monthly gross income to be $2,167.00 and that of Husband to be $2,937.00. Two Thousand One Hundred Sixty-seven Dollars ($2,167.00) is the gross monthly income of Wife if employed by the hospital at Birmingham. Each of those

Forms 14 contained other variations. Each of the parties had previously submitted a Form 14 showing different figures.

The judgment of the trial court ordered Husband to pay child support of $310.00 per month, per child. It further provided: "Any variance from Rule 88.01 is due to the fact that the Respondent shall have temporary physical custody for substantial periods during each month, during which time he shall provide for their needs directly."

■ The applicable Rule of Civil Procedure, in part, provides:

"It is sufficient in a particular case to rebut the presumption that the amount of child support calculated pursuant to Civil Procedure Form No. 14 is correct if the court or administrative agency enters in the case a written finding or a specific finding on the record that the amount so calculated, after consideration of all relevant factors, is unjust or inappropriate." Rule 88.01(e).

Also see § 452.340.8. It has uniformly been held that the requirement of such a written finding or a specific finding on the record is mandatory. *Harding v. Harding*, 826 S.W.2d 404 (Mo.App.1992); *Allen v. Allen*, 811 S.W.2d 58 (Mo.App.1991); *Beeman v. Beeman*, 816 S.W.2d 15 (Mo.App. 1991); *Campbell v. Campbell*, 811 S.W.2d 504 (Mo.App.1991). That mandatory requirement implicitly makes it necessary that a trial court determine the correct figures to be used in completing a Form 14 to be used by the court in determining the amount of child support. See *Harding v. Harding*, supra. How a trial court can determine the amount of child support calculated pursuant to Form 14 is "unjust or inappropriate" without first determining the correct figures to be used on Form 14, is difficult to explain. To permit a trial court to fix the amount of child support and ascribe *any variance* from the presumed child support to be due to some assigned factor, would virtually nullify the usefulness of Form 14. The trial court erred in fixing the amount of child support upon the basis assigned.

**780**

Wife's final point is that the trial court abused its discretion in awarding Husband marital property having the value of $13,200.00 and awarding her marital property having the value of $12,730.00. She argues that Husband's conduct caused such a division to be an abuse of discretion.

> "The trial court has 'great flexibility and far reaching power' in dividing marital property, and there is no formula respecting the weight to be given relevant factors which the court may consider. *King v. King*, 762 S.W.2d 544 (Mo.App. 1989). ... An appellate court will interfere only if the trial court's division of marital property is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion." *In re Marriage of Gourley*, 811 S.W.2d 13, 20 (Mo.App.1991).

The awarding to the Husband of marital property having a value of $470.00 greater than the marital property awarded to Wife, even under the circumstances of this case, is not "so heavily and unduly weighted" in favor of Husband as to amount to an abuse of discretion. The Wife's last point is denied.

The judgment of the trial court dissolving the marriage of the parties is affirmed. The judgment of the trial court awarding primary custody of the minor children to Wife is affirmed. The judgment of the trial court denying Wife's request to change the residence of the minor children is reversed. It is by this Court determined that it is in the best interests of the children that Wife be permitted to change their place of residence to the Birmingham, Alabama area and it is so Ordered, Adjudged and Decreed. The judgment of the trial court setting apart the nonmarital property and dividing and awarding the marital property is affirmed. That portion of the judgment of the trial court granting Husband temporary custody and providing for visitation of the children for diverse periods is reversed. The cause is remanded for the purpose of fixing an extended period of temporary custody of the children by the father during the summer vacation months and fixing periods of temporary custody on designated weekends and holidays and pro-viding for arrangements to effectuate such periods of temporary custody. Husband shall also be accorded reasonable visitation in the Birmingham, Alabama area.

Also upon remand, the trial court shall determine the correct figures to be considered in completing Form 14 and the amount of presumed child support and determine future child support in accordance with Rule 88.01 and § 452.340.8; and it is by this Court Ordered and Adjudged that the amount for future child support so determined shall supersede the award of $310.00 per month, per child. The award of child support of $310.00 per month, per child, shall remain in effect until child support is determined, as aforesaid.

SHRUM, P.J., and MONTGOMERY, J., concur.