**Rhoda Gayle FUCHS, Petitioner–Appellant,**

v.

**Robert B. FUCHS, Respondent–Respondent.**

No. 18990.

Missouri Court of Appeals,
Southern District,
Division Two.

June 7, 1994.

Motion for Rehearing or Transfer to Supreme Court Denied June 29, 1994.

Application to Transfer Denied July 25, 1994.

Manuel Drumm, Drumm, Winchester & Gleason, Sikeston, Justin C. Cordonnier, Thomas B. Weaver, Armstrong, Teasdale, Schlafly & Davis, St. Louis, for petitioner-appellant.

King E. Sidwell, Blanton, Rice, Sidwell & Ottinger, Sikeston, for respondent-respondent.

## PER CURIAM:

In its decree dissolving the marriage of Rhoda Gayle Fuchs (Wife) and Robert B. Fuchs (Husband), the trial court awarded primary physical custody of their child, William Thornton Fuchs (Will), to Wife but denied her request that they be permitted to move to Mississippi. Wife's sole contention on this appeal is that the trial court erred in denying her that permission.

Wife, who was originally from Meridian, Mississippi, met Husband when they were students at the University of Mississippi. After graduating from law school, Husband eventually returned to his home town of Sikeston, Missouri, to practice law. The parties have lived in Sikeston since their marriage in April 1977.

The parties were unable to have a child and in 1984 commenced what became a multi-year medically-assisted investigation into the cause. After approximately eleven visits to a clinic in Virginia, Husband and Wife were able to conceive a child which resulted in the birth of Will on October 6, 1990.

Shortly after Will's birth, it was discovered that Wife had unlawfully converted more than $175,000 from the bank by whom she was employed. She was subsequently charged in federal court with embezzlement, to which she pled guilty. The court departed from the sentencing guidelines and sentenced her to serve four months at a facility in Farmington, Missouri, followed by four months' home confinement and three years' supervised probation. She was also ordered to make restitution, which was accomplished with $90,000 from the sale of the parties' marital home as well as money from her father, which was partially a loan and partially a purchase of her interest in a family farm.

The parties separated in September 1992, and Wife filed this dissolution of marriage action the following month. Both before and after the filing of this action, Wife spent a considerable amount of time in Meridian, Mississippi, with her family.

Wife contends that, because of her conviction, it would be difficult to find employment in southeast Missouri. She testified that she had two job offers in Meridian, Mississippi, including one which would utilize her teaching certificate. She planned to move into an apartment in Meridian one block from the home of her parents, who had offered to assist her in any way necessary. Husband, however, contends that Wife's moving to Meridian with Will would unduly interfere with his ability to further develop a meaningful relationship with his son. He also contends that Wife's request to move to Mississippi stems from her desire to run away from the consequences of her criminal acts.

The trial court found that it was in the best interests of Will that Wife be awarded primary physical custody and that Husband be awarded temporary physical custody at times specified in the decree. In doing so, the court found that "the best interests of the minor child require that he be in the primary physical custody of Wife if, and only if, she remains in the State of Missouri; otherwise, the best interests of the minor child will be served in the primary physical custody of Husband." The court also found that "Wife is not currently employed and, in the opinion of the Court, because of her criminal conviction, is not immediately capable of earning an income sufficient to support herself in the State of Missouri." The court later amended that finding to read: "Wife is not currently employed and, in the opinion of the Court, because of her criminal conviction, is not *immediately* capable of earning an income sufficient to support herself in Southeast Missouri. However, in the opinion of the Court, Wife did not demonstrate that she cannot find suitable employment in Southeast Missouri; *i.e.*, Wife did not demonstrate a need that could not be met in the home community." The court also included the following language in its decree:

> Husband has requested "meaningful contact" with the minor child, which, in the opinion of the Court, is in the best interests of the minor child and will be thwarted by removal of the minor child from Southeast of [sic] Missouri, for the Court agrees with Husband that he has not been treated fairly by Wife with respect to the minor child since the parties' separation, and therefore, in the opinion of the Court, whether intentionally or unintentionally, Wife's removal of the minor child from Southeast Missouri will undermine the minor child's relationship with Husband.

■ Our review of such cases is governed by Rule 73.01(c), Missouri Rules of Court, as construed in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). Under these principles, the trial court's judgment will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *In re Marriage of Fry*, 827 S.W.2d 772, 775 (Mo.App.S.D.1992); *In re Marriage of Turner*, 764 S.W.2d 160, 161 (Mo.App.S.D.1989).

■ Paraphrased, Wife's sole point on this appeal is that the trial court's judgment was in error because it was not supported by

substantial evidence, was against the weight of the evidence, and was based on erroneous application and construction of the law. She places considerable emphasis on *Michel v. Michel,* 834 S.W.2d 773 (Mo.App.S.D.1992), where this court held that the trial court misapplied the law in denying a mother's request to move, with the parties' two minor children, to Alabama. In *Michel,* the court noted that four factors have been recognized as particularly relevant in determining the propriety of a custodial parent's relocation:

1. The prospective advantages of the move in improving the general quality of life for the custodial parent and child.

2. The integrity of the custodial parent's motives in relocating (whether primarily to defeat or frustrate visitation and whether the custodial parent is likely to comply with substitute visitation orders).

3. The integrity of the noncustodial parent's motives for opposing relocation and the extent to which it is intended to secure a financial advantage with respect to continuing child support, and

4. The realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is permitted.

*Id.* at 777. *See also Wild v. Holmes,* 869 S.W.2d 917, 919 (Mo.App.E.D.1994).

Wife's mother and father (a retired physician) live in Meridian, Mississippi, where she was raised. It is not unusual that she would want to return to that area to start a new life. Living in a different geographical area would likely minimize the stigma which Wife and Will would experience from her conviction. Additionally, while Wife did not produce evidence that she had attempted to find employment in southeast Missouri, it is reasonable to expect that she would experience some difficulty in that regard. To say that her employment opportunities would not be affected is to ignore the obvious. She did present evidence, however, of jobs which were available to her in Meridian, Mississippi. These factors, together with her family's support and willingness to help in Mississippi, indicate that she and Will would enjoy a better quality of life by moving to that area.

As noted in the *Michel* case, the considerations relating to the integrity of the custodial parent's motives in relocating include whether it is primarily to defeat or frustrate visitation and whether she is likely to comply with substitute visitation orders. In the instant case, there is no indication that Wife's motive in moving to Mississippi is to frustrate or defeat visitation by Husband. Rather, the evidence indicates only a desire on her part to be close to her family and return to the area where she grew up and where she could also obtain employment. She also indicated a willingness to comply with any reasonable orders concerning visitation.

In his brief, Husband argues that Wife's "requested relocation is motivated by her own selfish interest rather than the best interest of the son Will. She proposes to run away from the consequences of her criminal conduct. Despite her professed devotion to family and motherhood, she had to appreciate and anticipate the consequences that at some point she would be caught in her embezzlement and would be called upon to answer for the crime and pay the consequences of her criminal activity. This bespeaks a disregard for the interest and well being of others and a self centered devotion to her own social and economic recognition in the community." He also argues that "[i]t seems inimicable to allow Appellant through her criminal conduct to create circumstances upon which she the relies as justification for moving and denying her son meaningful nurturing and contact with his father. Her motives are selfish and disregarding of her son and consistent with her pattern of self importance, indifference to others, expectation of entitlement and special favors, exploitedness, lack of empathy and inability to recognize and take cognizance of others." Suffice it to say that our review of the evidence and record in this case does not support these conclusions.

█  The primary concern in such matters is the best interests of the child. *Tucker v. Tucker,* 778 S.W.2d 309, 312 (Mo.App.W.D. 1989). Custody decisions are not to be made as punishment of a parent. *In re Marriage of Dusing,* 654 S.W.2d 938, 943 (Mo.App.S.D.

1983). In the instant case, it is true that Wife committed a serious violation of the law which we neither overlook nor condone. Certainly, it is not our purpose to reward her for it. However, at the time of this trial, she had paid part of the consequences of that conduct and continues on probation. There is nothing in the evidence to indicate that this behavior will be of a continuing nature. In short, we do not consider it to be contrary to Will's best interests for Wife and Will to leave the geographical area where these violations occurred in an effort to establish a new life in an area close to her family, who are willing to provide support and help.

■ Concerning Husband's integrity in opposing the relocation, we see nothing in the evidence to indicate that his purpose is to gain a financial advantage relating to child support. Husband's espoused reason for challenging this request is the desire to have closer contact with his son. Obviously, this is an admirable purpose but in today's mobile society it is not always realistic to inflexibly confine the custodial parent to a fixed geographical area. *Michel v. Michel,* 834 S.W.2d at 776–77; *Kline v. Kline,* 686 S.W.2d 13, 17 (Mo.App.W.D.1984); *In re Marriage of Dusing,* 654 S.W.2d at 942. While it is in the best interests of a child to have a continued interrelationship with both parents, *Flaton v. Flaton,* 777 S.W.2d 948, 950 (Mo.App. E.D.1989), and *Samuels v. Samuels,* 713 S.W.2d 865, 868 (Mo.App.W.D.1986), this does not mean that non-residence is an insurmountable obstacle in achieving that purpose. *See Pender v. Pender,* 598 S.W.2d 554, 556 (Mo.App.W.D.1980).

■ The fourth of the factors described in *Michel* is the realistic opportunity for visitation which can provide an adequate basis for preserving and fostering Husband's relationship with Will if relocation is permitted. Husband lives in Sikeston, Missouri, which, according to the evidence, is approximately 385 miles from Meridian, Mississippi. There is no indication that this distance or the circumstances of the parties would prevent the maintenance of a meaningful relationship between Husband and Will. This is about the same distance as from Sikeston to Kansas City, Missouri. Ordinarily, nothing would prevent Wife from moving to Kansas City or other locations in the state without prior approval from the court. It is not a decisive factor, therefore, that the requested move would be to another state. Similar factors would apply to a removal from southeast Missouri to Mississippi as would apply to a removal from southeast Missouri to southwest Missouri. *See In re Marriage of Dusing,* 654 S.W.2d at 942, and *Michel v. Michel,* 834 S.W.2d at 777. Provisions to insure a relationship with both parents can be made without confining the residence of the custodial parent. *Kline v. Kline,* 686 S.W.2d at 17. Moving a child to another state may be permitted if it is in the best interests of the child, even though visitation may be made more difficult. *In re Marriage of Cornish,* 780 S.W.2d 62, 65 (Mo.App.E.D. 1989); *Flaton v. Flaton,* 777 S.W.2d at 950.

In the instant case, there is no indication that Wife is opposed to or would interfere with a visitation schedule which would be realistic considering the distance between Sikeston and Meridian, Mississippi. There is also no evidence of Husband's physical or financial inability to maintain a relationship with his son at that distance.

As noted in *In re Marriage of Turner,* 764 S.W.2d at 162, disputes concerning the custody of children are to be resolved on their particular facts rather than in terms of academic rules. Other relevant factors include a comparison of the geographical, material and social aspects of the alternative places of residence, as well as a comparison of all aspects of the alternative custody offered by each parent. *Michel v. Michel,* 834 S.W.2d at 776.[1]

The evidence indicated that Wife had primarily been responsible for the care of Will except for the four months of her incarceration. During a part of that time, Will stayed with Wife's parents in Meridian, Mississippi. He also stayed with Husband's brother and sister-in-law in Sikeston but did not stay with Husband. Husband would, however, go to

---

1. While there were depositions of a psychologist and psychiatrist introduced, as well as journals kept by Wife of the parties' activities, they are not included in the record filed with this court.

the brother's home in the evenings so he would be there when Will went to bed. The evidence also indicated that Husband often returned to work on evenings and weekends, and he periodically would be away from home in the evenings while he worked out at a gym. Husband testified that if he were given custody of Will, he intended to stay at the home of his mother (who was bedfast with arthritis) until he got back on his feet financially and emotionally. He does not, however, appeal from the trial court's decision to award custody of Will to Wife.

Husband contends that the instant case is similar to and should be controlled by *Samuels v. Samuels*, 713 S.W.2d 865, and *Tucker v. Tucker*, 778 S.W.2d 309. We believe each of those cases is distinguishable, however. In *Samuels*, the trial court denied the mother's request to move the residence of the children from Missouri to New York. Unlike the instant case, however, in *Samuels* the trial court concluded that the mother's plan for subsistence in New York in terms of employment and residence with a married sister was too speculative an experiment and therefore not in the best interests of the children. It noted, however, that it did not intend to keep her in Missouri forever and that a different situation could exist if, for instance, she remarried and desired to move to another place.

In the instant case, unlike *Tucker*, while Husband has demonstrated a genuine interest in being with Will, the facts do not indicate that he has, in the past, been "a very active participant in the parenting" of his son. *Tucker* at 312.

We are persuaded by the reasoning in *Michel v. Michel*, and under the facts and circumstances of this particular case, we conclude that the trial court misapplied the law in restricting the place of residence of Wife as a condition of retaining primary custody of Will.[2] We reverse that portion of the decree which would prevent Wife from changing her residence and that of Will to Meridian, Mississippi. In the event Wife does change her residence to that location, the visitation schedules set out in the decree may not be realistic or in the best interests of the child.[3] Accordingly, that portion of the decree establishing the times of Husband's rights of temporary custody is reversed and remanded for a determination and establishment by the trial court of reasonable visitation and custody schedules considering the distance which will separate the parties.

---

2. In the decree, as amended by the trial court, Wife was not only prevented from moving out of the state if she desired to retain custody of Will, but it also suggests that her residence was effectively restricted to "Southeast Missouri." A court should not, in advance, restrict a custodial parent's residence to a particular area of the state. *See Kline v. Kline*, 686 S.W.2d at 17. Likewise, the court should not decree an automatic change of custody if the custodial parent moves from a particular county. *In re Marriage of Dusing*, 654 S.W.2d at 942–43. *See also In re*

*Marriage of Greene*, 711 S.W.2d 557, 564 (Mo. App.S.D.1986).

3. Husband was awarded visitation on alternate weekends from 5:00 p.m. on Friday until 7:00 p.m. on Sunday; one weekday evening until the year the child attends kindergarten; six weeks during the summer months divided into three periods of fourteen consecutive days; and Will's birthday, Father's Day, and certain holidays during alternating years.