April D. EFFINGER, Appellant,

v.

Mark S. EFFINGER, Respondent.

No. 66558.

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 16, 1996.

Terry Lee Jones, Bely, Jones & Hickel, P.C., Clayton, for appellant.

Michael A. Turken, Cundiff, Turken & Londoff, St. Charles, for respondent.

GARY M. GAERTNER, Judge.

Appellant, April D. Effinger ("wife"), appeals from the judgment dissolving her marriage to respondent, Mark S. Effinger ("husband"), in which the St. Charles County Circuit Court denied her request for permission to move from St. Charles, Missouri, to Marion, Illinois; denied her request for maintenance; awarded her $716 per month in child support; and awarded her $2,500 in attorney's fees. We affirm in part and remand in part.

Husband and wife were married December 7, 1986. Two daughters were born of the marriage, J.E. on April 13, 1987, and K.E. on August 4, 1989. Wife worked for husband's surveillance company during most of the marriage. Wife had worked at various jobs in Missouri before marrying husband. Also, wife was licensed as a hair stylist in Illinois, and before moving to Missouri had worked in a hair salon in her hometown of Marion, Illinois.

Husband and wife purchased a home in St. Charles, where they were living at the time of the couple's separation and where wife and the two children lived after April 15, 1993. The marital home was heavily encumbered by liens, with little equity. The older daughter, J.E., was enrolled in kindergarten in St. Charles.

On November 22, 1992, wife left the St. Charles marital home with the two children, leaving a note telling husband she was separating from him. Wife went to her parents'

home in Marion, approximately 115 miles away from St. Charles, a drive of two and one-half hours. Wife filed a petition for dissolution in St. Charles County Circuit Court the next day.

Wife refused husband's requests for permission to see the children until he had signed a consent agreement setting out the times and terms of visitation. This consent agreement, dated December 11, 1992, provided that husband would have custody of the girls every other weekend, with pick-up and drop-off in Mount Vernon, Illinois, about halfway between St. Charles and Marion.

On February 11, 1993, the trial court issued an order *pendente lite,* ordering wife to return the two children to Missouri. The order also, *inter alia,* awarded wife primary custody of the children, and husband visitation and temporary custody; allowed wife exclusive possession of the marital home if she chose to live there with the children; ordered each spouse to pay half the monthly mortgage payment, or $410 per month each; and ordered husband to pay wife maintenance of $750 per month and child support of $687 per month.

Wife did not return to St. Charles until April 15, 1993, assigning as her reason husband's failure to move out of the marital home. After coming back to St. Charles, J.E. returned to the school she had previously attended. Husband exercised his visitation rights regularly.

Trial began, after several postponements, on March 11, 1994. Both husband and wife asked for primary physical custody of the children. In addition to custody, wife sought permission to move to Marion with the two girls.

Wife was unemployed, while husband was earning a salary of at least $40,000. Wife sought maintenance of $750 per month for one year if allowed to move to Marion, or $1,000 per month for at least two years if required to remain in Missouri. Wife's statement of income and expenses listed her monthly income as $1,437 ($750 maintenance and $687 child support pursuant to the order *pendente lite*) and her monthly "anticipated expenses" as $2,239.

While in Marion, wife worked briefly in a doctor's office, but was hospitalized in late February and early March of 1993 and did not work thereafter. Wife testified she had been offered employment as a hair stylist in Marion, with a potential income of $250 to $300 per week within the first year, and opportunity for increased earnings as she developed clientele. To prepare for this job wife attended instructional classes to renew and update her Illinois cosmetology license.

Wife admitted she did not seek employment in Missouri nor inquire into the possibility of obtaining a Missouri cosmetology license by reciprocity or otherwise. Wife submitted the following as grounds for her failure to seek and obtain employment in Missouri: her desire to move back to Marion to accept the job she had waiting for her there, her belief the dissolution proceedings would be resolved sooner than they actually were, and her inability to pay for someone to watch J.E. and K.E. if she worked.

Wife testified that, if granted leave to move to Marion, she and the children would move into a two-bedroom house owned by her mother. This house was much smaller (650 square feet) than the St. Charles marital home. There was evidence at trial that this house was located near an area that flooded, creating a swamp on the property.

Wife had several friends in the St. Charles neighborhood, as did the two girls. In contrast, wife knew no one in the neighborhood in Marion to which she planned to move with J.E. and K.E. Wife admitted she did not know if any children lived in the neighborhood.

J.E. attended a highly-rated school in St. Charles. J.E.'s teacher, testifying on behalf of husband, stated J.E. was doing very well at school, academically (an A/B student) and socially (several friends in her class). J.E.'s teacher also testified husband was actively involved in J.E.'s education. On the other hand, wife admitted she knew nothing of the schools in the Marion area.

Wife had no current expenses for day care, as she had been staying at home with the children. Wife claimed this would change if she moved, and testified the costs for day

care in Marion would be $390 per month. However, wife also testified her mother would help watch J.E. and K.E., thereby defraying at least some of the costs. There was no evidence as to how much child care would cost if wife remained in Missouri.

The trial court entered an amended decree of dissolution on July 27, 1994. The court found both parties fit for primary custody of the children and awarded them joint custody, with primary physical custody with wife and visitation rights and temporary custody with husband. The court denied wife's request for permission to move to Marion with the girls, stating she "shall not remove the minor children from the State of Missouri[,]" and further provided wife would have to bear the expenses of visitation if she moved more than thirty-five miles from the marital home in St. Charles.

The trial court denied wife's request for maintenance, stating in the decree wife "has made no effort to find employment, but is capable and has the necessary skills to support herself." The court ordered husband to pay wife child support of $716 per month ($358 per child), which the court determined by attributing to wife a gross monthly income of $866. The court's Form 14 made no allowance for wife's reasonable work-related child care costs, although the decree did include a provision stating, "[husband] is ordered to reimburse [wife] for her work related daycare expenses; [husband] is obligated to pay the percentage of work related daycare expenses equal to his percentage of the parties [sic] total monthly income."

The trial court ordered the marital home sold and the net proceeds (if any) distributed to the parties. Husband was given substantial visitation rights, including custody of the girls every other weekend and every Wednesday night. Finally, the court ordered husband to pay wife $2,500 of her $8,200 in attorney's fees. Wife's appeal followed.

■ Our review on appeal is limited: The trial court's judgment must be affirmed unless it is against the weight of the evidence, unsupported by evidence, or erroneously states or applies the law. *Riley v. Riley*, 904 S.W.2d 272, 275 (Mo.App.E.D. 1995). We will set aside a decree of dissolution only upon a firm belief the decree was wrong. *Wild v. Holmes*, 869 S.W.2d 917, 918 (Mo.App.E.D.1994). Where conflicting evidence or credibility of witnesses is involved, we defer to the trial court. *Id.*

■ For her first point on appeal, wife contends the trial court erred in refusing to allow her to move to Marion, Illinois, with the children. We disagree.

■ In determining the propriety of the custodial parent's relocation to another jurisdiction, courts consider the following factors:

1. The prospective advantages of the move in improving the custodial parent's and child's quality of life.

2. The integrity of the custodial parent's motives for relocation.

3. The integrity of the non-custodial parent's motives for opposing the move, particularly the extent such opposition is intended to secure a financial advantage with respect to continuing child support.

4. Whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the non-custodial parent's relationship with the child if relocation is allowed.

*Riley*, 904 S.W.2d at 276–277; *Fuchs v. Fuchs*, 887 S.W.2d 414, 417 (Mo.App.S.D. 1994); *Michel v. Michel*, 834 S.W.2d 773, 777 (Mo.App.S.D.1992).

■ Where all or most of the above factors weigh in favor of the custodial parent, the trial court's refusal to allow the custodial parent to move constitutes reversible error. *See Riley*, 904 S.W.2d at 277–278; *Fuchs*, 887 S.W.2d at 416–417. On the other hand, where the factors favor neither parent, or favor the non-custodial parent, the trial court's denial of the custodial parent's request to move will be affirmed. *See Wild v. Holmes*, 869 S.W.2d at 919; *Carter v. Schilb*, 877 S.W.2d 665, 668 (Mo.App.W.D.1994). Each case involving the relocation of children must be resolved on the particular facts of the case rather than by rigid application of rules, and the best interests of the child always remain the paramount concern. *Fuchs*, 887 S.W.2d at 416–417.

Bearing the above principles in mind and turning to the facts of the case before us, we see no error in the trial court's denial of wife's request to move to Marion, Illinois. Concerning the first factor, there was evidence to support a finding that the prospective advantages of the move to Marion which would enure to the children's benefit while they were in wife's custody, were outweighed by the current benefits to the children of remaining in St. Charles.

While it may have been true a job with a steady and potentially increasing income awaited wife in Illinois, nothing in the record shows wife could not find similar employment in the St. Charles area had she attempted to do so. More importantly, wife offered no evidence of the quality of life her daughters would enjoy if they moved to Marion. Specifically, wife offered no evidence concerning the schools in the area, or of the neighborhood to which she wanted to move. Wife did not even know if any other children lived in the Marion neighborhood. Further, the house to which wife planned to move was only 650 square feet and susceptible to flooding.

In contrast, husband provided evidence to support his contention that the children should not be uprooted. There was abundant evidence that J.E., in particular, was doing well at school, and had many friends in the neighborhood. In sum, while it was far from clear whether the children's general quality of life would improve if they moved, it was clear their quality of life would not diminish if they stayed. The first factor favors husband.

As for the second factor—the integrity of wife's motives in seeking to relocate with the children—we note wife refused to let husband see J.E. and K.E. for nearly a month after their separation, until husband signed the December 11, 1992, consent order. We also note wife refused to return the girls to Missouri for over two months after the trial court's February 11, 1993, order that she do so. Due to this behavior, the trial court could have reasonably doubted wife's explanation that her motive for relocating was to take the employment opportunity available to her in Marion; rather, the court could have

found wife sought primarily to distance herself and the girls from husband. The second factor weighs in husband's favor.

With respect to the third factor—the integrity of husband's motives in opposing the move—the evidence supports a finding that husband was motivated by his desire to be with his daughters more frequently, and by his concern for their welfare. There was no evidence husband's opposition was grounded on a desire to secure a financial advantage, or on any other illicit motive. The third factor favors husband.

■ Finally, we believe the fourth factor favors wife, as her proposed move to Marion would not unreasonably deprive husband of visitation or the opportunity to foster his parental relationship with J.E. and K.E. Moving a child to another state may be permitted even if visitation is made more difficult for the non-custodial parent (*if* the move is in the child's best interests). *Fuchs,* 887 S.W.2d at 417. While Marion, Illinois, is over a hundred miles away from the St. Charles area, thereby rendering husband's mid-week visitation unworkable for practical purposes, there would still be ample opportunity for the daughters to develop a continuing relationship with their father. We note decisions involving greater distances and lesser opportunities for visitation than the case at bar have ruled in favor of the custodial parent. *See Fuchs,* 887 S.W.2d at 415 (custodial parent sought permission to move to Mississippi); *Riley,* 904 S.W.2d at 274 (Texas); *Michel v. Michel,* 834 S.W.2d at 774 (Alabama).

■ On balance, the factors outlined above favor husband; therefore, we do not have a firm belief the decree of the trial court was wrong. *See Wild v. Holmes,* 869 S.W.2d at 919. The evidence supports a finding that the best interests of J.E. and K.E. would be served if they remained in the St. Charles area. While it is true that in today's "highly mobile society, it is unrealistic to inflexibly confine a custodial parent to a fixed geographical area," the custodial parent's relocation still must be "consistent with the best interest of the minor children." *In re Marriage of Greene,* 711 S.W.2d 557, 564

(Mo.App.S.D.1986). The trial court's denial of wife's request to move to Marion, Illinois, was adequately supported by the record and we find no error. Wife's first point is denied.

For her second point on appeal, wife challenges the trial court's denial of maintenance, claiming it was against the weight of the evidence. Review on appeal is limited to determining whether the court abused its discretion. *Kovacs v. Kovacs*, 869 S.W.2d 789, 793 (Mo.App.W.D.1994).

The trial court denied wife's claim for maintenance on the ground it found wife "made no effort to find employment, but is capable and has the necessary skills to support herself." We see no error in this finding, and note denial of maintenance is not error if the record shows the spouse seeking maintenance is or may be prepared to support himself or herself by means of appropriate employment. *Id.* at 793–794.

However, in light of the court's order that the marital home be sold, and the fact that wife will have no residence for herself and her daughters as a result, maintenance may be necessary. We accordingly remand for redetermination of maintenance in light of this.

For her third point on appeal, wife asserts the trial court's calculation of child support was erroneous. Wife claims the court's imputation of $866 in gross monthly income to wife was without sufficient evidence. Wife also complains of the court's failure to include wife's child care expenses in its computation of child support, as required under Rule 88.01 and Form 14.

We do not find the court's imputation of income improper. "In calculating child support, a trial court may properly impute income to a parent by considering past, present and anticipated future earning capacity." *In re Marriage of Julian*, 868 S.W.2d 182, 184 (Mo.App.E.D.1994). The court may consider employment potential and probable earnings level based on the parent's recent work history, occupational qualifications, and prevailing job opportunities. *Id.;* Directions for Completion, Form 14. Here, there was evidence wife was capable of earning $250 to $300 per week at the hair styling job in Marion.

However, we do take issue with that provision of the trial court's decree stating "[husband] is obligated to pay the percentage of work related daycare expenses equal to his percentage of the parties [sic] total monthly income." This provision is too vague and uncertain to be enforceable. Rather, in determining the amount of child support, courts are to follow Form 14, which provides that the custodial parent's reasonable work-related child care expenses are to be added to the parents' combined adjusted gross income. Since there was no evidence as to the costs of child care in Missouri, we remand for a determination of wife's work-related child care expenses so husband's child support obligation can be properly calculated pursuant to Form 14.

For her final point on appeal, wife contends the trial court erred in limiting its award of attorney's fees to $2,500. The award of attorney's fees in dissolution actions is within the broad discretion of the trial court and should not be disturbed absent a showing of an abuse of that discretion. *Rich v. Rich*, 871 S.W.2d 618, 627 (Mo.App.E.D. 1994). We find no such abuse of discretion here. We note the court may consider the award of additional attorney's fees as made necessary by further proceedings. RSMo § 452.355.1 (1994).

We remand for reconsideration of maintenance and child support as directed in our opinion herein, and otherwise affirm.[1]

SMITH, P.J., and RHODES RUSSELL, J., concur.

---

1. Husband's motion to dismiss wife's brief under Rule 84.04 is without merit and is denied.