**In re the Marriage of Donna J. RILEY, n/k/a Donna J. Schaeffer, Appellant,**

v.

**Roger S. RILEY, Respondent.**

**No. 65699.**

Missouri Court of Appeals,
Eastern District,
Division One.

May 30, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 27, 1995.

Application to Transfer Denied
Sept. 19, 1995.

Julius H. Berg, Dennis A. Buchheit, Clayton, for appellant.

Bruce Hilton, St. Louis, for respondent.

CRAHAN, Judge.

Mother appeals the trial court's order denying her motion to modify the parties' dissolution decree to permit her to move her son, Patrick, out of state and granting Father's motion to transfer custody of Patrick from Mother to Father. Mother maintains, *inter alia*, that the trial court's determination that the transfer of custody would be in the best interest of the child is not supported by substantial evidence and that the provisions for her temporary custody and visitation with Patrick and the parties' other child, Scott, are impractical, unworkable and unsupported by substantial evidence. We reverse and remand with directions.

■ The marriage of the parties was dissolved in March, 1993. In the decree, Mother was awarded custody of the parties' younger son, Patrick, then age 13, and Father was awarded custody of Scott, then age 16. Each party was ordered to pay child support to the other and was granted a "Siegenthaler Schedule"[1] of temporary custody and visitation. An amended decree was entered in April, 1993 but did not change the custodial provisions. The parties are quite comfortable financially, having won an annuity of $220,000 gross per year in the Illinois Lottery, which was divided equally in the decree. Payments will continue for approximately ten more years.

In August, 1993, Mother married Donald Schaeffer and they continued to reside, with Patrick, in St. Louis. In early October, 1993, Mr. Schaeffer was notified by his employer that he was being transferred to Texas. On October 12, 1993, Mother filed a motion to modify the decree to permit her to remove the child from the state for more than 90 days.[2] Mother also sought the entry of temporary custody orders for both children. In his answer, Father denied that the move would be in Patrick's best interest and claimed that if Mother moved to Texas as planned, custody should be transferred to him. Alternatively, Father asked for an order granting specific temporary custody rights in Missouri, payment of any transportation expenses by Mother, abatement of all child support for Patrick, consideration of Mr. Schaeffer's income in determining the amount of any ordered child support and payment of his attorney fees. Later, Father filed a cross motion to modify seeking to transfer custody of Patrick to him, terminate his child support obligation and require Mother to pay child support pursuant to Rule 88.01.

A hearing on the motions was held on February 9, 1994 and the trial court entered its order the same day. Mother and Father were the only witnesses. Documentary evidence pertaining to Patrick's schooling and activities was received without objection. Neither party filed a Form 14.

In its order, the trial court transferred custody of Patrick from Mother to Father and granted Mother the same "Siegenthaler Schedule" of temporary custody and visitation for both children. Mother was ordered to pay any costs of the children's transportation and to pay additional child support in the amount of $346.58 for Patrick's support, which the court found to be in accordance with authorized support guidelines.

■ Our review in this case is governed by Rule 73.01(c) and *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The decision of

---

1. The "Siegenthaler Schedule" is a standard schedule of temporary custody frequently utilized in decrees entered in St. Louis County. It essentially awards the non-custodial parent temporary custody on Wednesday nights and alternating weekends and on certain holidays in alternating years. It also provides three non-consecutive two week periods of custody during the summer.

It is patterned after the provisions described in *Siegenthaler v. Siegenthaler*, 761 S.W.2d 262, 266 (Mo.App.1988).

2. Because of the possibility of additional transfers, Mother's motion was not limited to Texas.

the trial court must be affirmed unless it is against the weight of the evidence, unsupported by substantial evidence, or misstates or misapplies the law. *Sinopole v. Sinopole,* 871 S.W.2d 46, 47 (Mo.App.1993). Where the custody of a child is at issue, the welfare of the child is the primary consideration. *Wenger v. Wenger,* 876 S.W.2d 735, 743 (Mo.App. 1994). It is for the trial court to determine what is in the best interest of the child and it is for this court to determine whether there is evidence to support that assessment.

█ There was little, if any, dispute about the facts. Patrick has always resided with Mother. In early October, 1993, Mr. Schaeffer was informed of his transfer to Texas. About a week later, Mother filed her motion to modify seeking relief from the provision of the decree prohibiting her from removing the child from the state for more than 90 days without prior court approval.

Mother and Mr. Schaeffer purchased a home in a new subdivision in Plano, Texas, just north of Dallas, which was about fifteen minutes from Mr. Schaeffer's new office. Mother delayed moving to Plano with Patrick until after Thanksgiving to facilitate visitation with Father over the holiday.

While in St. Louis, Patrick had been attending parochial school but, in consultation with Mother, decided to attend the public Hendrick Middle School in Plano. Hendrick was rated number two in the State of Texas and was better than the available parochial school. As in St. Louis, Patrick's grades at Hendrick were mostly B's. Patrick had always been involved in extracurricular activities and immediately became active in a number of programs in Plano. He joined a soccer team and made plans to play baseball in the summer. He joined a boy scout troop and was working toward obtaining Eagle Scout rank in the near future. He signed up for a scout camp for two weeks in July.

Patrick attends religious training classes two nights per week and is active in the youth group. At the time of the hearing in February, 1994, he had recently attended a weekend retreat with Mother and Mr. Schaeffer, who served as group leaders. Patrick, Mother and Mr. Schaeffer are all Roman Catholics. Father is of a different faith. Patrick's confirmation was scheduled for April, 1994.

Patrick was receiving tutoring from his math teacher at Hendrick after school. Mother indicated her intent to continue the math tutoring and to enroll Patrick in a keyboarding class suggested by the school counselor to help him prepare for high school the following year.

Mother is not employed outside the home but takes classes in computers and physical education. She works as a volunteer at Patrick's school cafeteria and drives him where he needs to go. She also helps with his homework. Mother does not believe it is a good idea for children to be home by themselves if it is not necessary. Mother feels Patrick is mature enough to stay home by himself at times and he has done so on occasion. However, Patrick does most things with Mother and Mr. Schaeffer.

Mother testified that Mr. Schaeffer and Patrick engaged in a variety of activities together. Mr. Schaeffer helps with the carpooling and cooking and has been helping Patrick with his school schedules to help him prepare for high school and college. According to Mother, Patrick had adjusted well to his move to Texas. Others have told Mother that Patrick seems very well adjusted.

The same cannot be said of the parties' older son, Scott, who has resided with Father since the dissolution. At the time of trial, Scott was attending Affton Senior High School, the third high school he had attended. Scott transferred to Affton after difficulties arose at his previous school, DuBourg High School. At Affton, Scott was failing all but one subject. Father spent very little time with Scott on his studies. Although Scott had been involved in extracurricular activities at DuBourg, he was not involved in any at Affton. Instead, he was working approximately 30 hours per week at a fast food restaurant to pay for insurance and maintenance on a truck. Father did not think Scott's low grades were the result of Scott working. Although Scott had received tutoring prior to the dissolution, he had no tutoring since the dissolution.

Father and Mother do not communicate directly. Father learned of the impending move from Patrick. Father did not consent to the move because he did not think it is a good idea to split the two brothers up and he did not feel the move would be in Patrick's best interest.

■ In her first point relied on, Mother essentially urges that the trial court's decision to transfer custody of Patrick to Father is unsupported by substantial evidence in that the undisputed evidence established that she had been and was satisfying Patrick's physical and emotional needs and failed to establish that Father would be a proper custodian for the child. As Father points out, however, the bulk of Mother's argument focuses on the trial court's denial of her motion for permission to move Patrick out of state. Because that ruling is not specifically mentioned in the point relied on, Father urges that the issue of whether the trial court erred in refusing permission to move the child is not properly before us and that our review must therefore be limited to the narrow issue of whether the trial court erred in transferring custody of Patrick to Father.

■ In the abstract, Father is correct that the issue of whether a party should be granted permission to move a child from the state is separate from the issue of whether custody should be transferred from one party to another. *See, e.g., Wild v. Holmes,* 869 S.W.2d 917 (Mo.App.1994) (affirming denial of permission to move child to Ohio; no change of custody sought or considered). Thus, the better and safer practice would be to submit separate points relied on for each issue and address both issues in a combined fashion in the argument to avoid redundancy. In this case, however, it is clear that the parties and the trial court viewed Mother's request to move the child and Father's request to transfer custody as a single, "either/or" proposition. Had the evidence disclosed and the trial court found that it would be feasible for Mother to remain in Missouri with the child despite her husband's transfer to Texas, it could not have transferred custody of Patrick to Father. Mother's impending move to Texas was the only alleged "change in circumstances" that could conceivably have warranted a change in Patrick's custody.[3] Having alleged that, absent a change in custody, Mother would remove the child from the state without his or the court's consent, Father is in no position to complain on appeal that Mother has waived or acquiesced to the court's denial of permission to move the child and can only be heard to challenge the transfer of custody. Indeed, to separate the issues as Father now suggests would compel reversal of the custody change because there was no evidence that Mother would refuse to abide by the court's ruling on her request for permission to move the child. Thus, there would be no evidence to support a finding of a substantial and continuing change in circumstances warranting a change in custody. Accordingly, we find that the trial court's ruling on Mother's request to move the child is properly before us for review. Further, although inartfully presented, that issue is sufficiently set forth in Mother's brief to fairly apprise Father of the issues on appeal. We will therefore address the merits of the trial court's ruling on Mother's request for permission to move the child and Father's request for a change in custody as a single issue, just as it was tried to the trial court.

■ Past custody of a child by the moving party and the need of the parent to move from the state have been held to be sufficient facts, if proven, to warrant permission to remove a child from the jurisdiction. *In re Marriage of Cornish,* 780 S.W.2d 62, 64 (Mo. App.1989); *Pender v. Pender,* 598 S.W.2d 554, 556 (Mo.App.1980). "In our highly mobile society, it is unrealistic to inflexibly confine a custodial parent to a fixed geographical area, if removal to another area for reasons such as change of employment, remarriage, etc., is consistent with the best interest of the minor children." *In re Marriage of Greene,* 711 S.W.2d 557, 564 (Mo.App.1986). This court has recognized and applied four factors as "particularly relevant in determining the

---

**3.** The only other alleged "change in circumstances" alleged by Father was an increase in Mother's available income due to her marriage to Mr. Schaeffer. An increase in Mother's income would not, of course, justify a change in custody from Mother to Father.

propriety of a relocation by a custody parent." *Wild v. Holmes,* 869 S.W.2d at 919 (citing *Michel v. Michel,* 834 S.W.2d 773 (Mo.App.1992)). We will separately analyze each factor in turn.

(1) *The prospective advantage of the move in improving the general quality of life for the custodial parent and child.* Although it is debatable whether Patrick's already high general quality of life would be or could be "improved" by the move, there is no evidence that it would be diminished. Mother enrolled him in a highly rated school and he has access to both tutoring and numerous extracurricular activities. Continued religious training has also been arranged. If viewed as an "either/or" proposition of moving or remaining in St. Louis with Father, the religious aspect of Patrick's life would necessarily be curtailed by a change in custody because Father is of a different faith and could not serve as a religious group leader as Mother and Mr. Schaeffer have. Further, Father's discontinuance of tutoring for the older child despite his failing grades does not engender confidence that Patrick's past above average performance would continue. The proposed move clearly offered prospective advantages in improving Mother's quality of life by permitting her to reside with her new husband in Texas and, alternatively, removing the prospect of her husband's unemployment while seeking a new job in Missouri. The first factor clearly favors Mother.

(2) *The integrity of the custodial parent's motives in relocating.* There was no evidence that Mother or Mr. Schaeffer either sought the job transfer or had any viable alternative but to accept it. Nor was there any evidence that Mother was relocating in order to frustrate or defeat Father's visitation rights. Mother specifically requested that the trial court establish a visitation schedule appropriate to the new circumstances. The second factor also favors Mother.

(3) *The integrity of the non-custodial parent's motives for opposing relocation and the extent to which it is intended to secure a financial advantage with respect to continuing child support.* Although the court-ordered child support for Patrick is well within Father's ample means, he has attempted to use Mother's relocation to reduce or eliminate his child support obligation at every opportunity. Although he sought to abate all child support for Patrick if the move was permitted, in his motion for custody, he urged that Mother be ordered to pay support for both Patrick and Scott, calculated on the basis of both her and Mr. Schaeffer's income. At trial, he asked the court to waive all child support for both parties if the move was permitted. As Mother points out, however, even this proposal is decidedly to Father's financial advantage. Given Scott's failing grades, it is unlikely he will attend college so he may well become emancipated soon. Patrick does plan to attend college. Even assuming Scott continues his education, given the difference in the boys' ages, it is virtually certain that Mother's child support obligation for Scott will be terminated long before Father's obligations for Patrick. Father also sought an order requiring Mother to pay his attorney's fee and all transportation costs, which are well within his ample means. Factor three also favors Mother.

(4) *Whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the non-custodial parent's relationship with the child if relocation is permitted.* The evidence established that Father did not take advantage of the full amount of allotted visitation with Patrick when he was living in St. Louis. Father rarely availed himself of Wednesday night visitation due to conflicts with Patrick's activities. Nor did he accept custody of Patrick for the full six weeks of custody during the summer. As discussed *infra,* mid-week and designated holiday visitation provided for in the original decree is obviously impractical in view of the distances involved. At trial, Father proposed that the visitation schedule be modified whereby he could have custody of Patrick on designated long weekends and during school breaks instead of every other weekend. Father also expressed interest in occasionally exercising custody in Dallas so that he could remain a part of Patrick's life in his typical surroundings. Such visitation would also cause less interference with Patrick's extracurricular

activities. With careful planning and attention to the school calendar, we see no reason why the trial court, with the assistance of the parties, cannot devise an appropriate schedule of visitation along the lines suggested by Father which will permit as much or more contact between Father and son as they enjoyed prior to the move. The fourth factor favors Mother.

In his brief, Father does not dispute any of the foregoing analysis but instead urges that the trial court's order can be sustained on the basis of Mother's removal of the child to Texas without court approval, her interference with his custody following the move, and the need to maximize contact between the two boys. None of these contentions are supported by the evidence.

Mother had not removed the child from the state for more than 90 days at the time of the hearing. She delayed moving Patrick to Texas until after Thanksgiving specifically to accommodate Father's visitation during the holiday. The hearing was held and the judgment entered on February 9, 1994, which was less than 90 days after Mother moved Patrick to Texas. Mother only needed court approval for a move of more than 90 days, which she timely requested.

The record does establish that Mother failed to make arrangements for Wednesday night and bi-weekly visitation following the move, although she did bring Patrick to St. Louis for his scheduled visitation with Father over Christmas. The evidence also establishes, however, that Father did not routinely take advantage of Wednesday night visitation. Although Father knew the whereabouts of the child and had Mother's phone number, he apparently made no attempts to contact Mother about visitation on scheduled weekends. Although Mother may likewise be faulted for failing to contact Father, we do not believe the record can fairly be characterized as establishing that Mother unduly interfered with Father's visitation. Her request that the court devise an appropriate visitation schedule to accommodate the new circumstances was at all times pending before the court and there is no indication that

Mother had any intent to deprive Father of his custody rights. Father could not have been deprived of more than three, or perhaps four scheduled bi-weekly visits and, under the circumstances, we hold that such limited deviation from the visitation schedule does not support a change in custody.

■ Finally, the record does not support a finding that a change in custody was necessary to maximize contact between the two boys. Although maintaining contact between siblings is certainly a factor to consider in fashioning a custody award, it is somewhat attenuated when the children have already been separated by the initial decree. Neither party offered any evidence of the amount of time the boys spent together since the dissolution but it is unlikely to have been substantial with both boys in school and one working thirty hours per week. Both parents expressed an interest in arranging visitation schedules for Patrick and Scott which would permit them to be together and there is no evidence that this would result in any less contact than they enjoyed prior to the move. In sum, the evidence does not support a finding that a change in custody is necessary to maximize contact between Patrick and Scott.[4]

Based on the foregoing, we hold that the trial court's order denying Mother's request to remove Patrick from the state and transferring custody to Father is not supported by substantial evidence and represents a misapplication of the law. Accordingly, we reverse the judgment of the trial court and remand with directions to grant Mother's motion. On remand, the trial court is further directed to develop an appropriate visitation schedule consistent with our previous discussion of the issue and our resolution of Mother's second point, which follows.

■ In her second point, Mother urges that the trial court's imposition of a standardized "Siegenthaler Schedule" for her visitation with Patrick and Scott is impractical, unworkable and unsupported by substantial evidence. Although the provisions pertaining to Patrick are mooted by our reversal of

---

4. Moreover, we note that if Scott should become emancipated, a change in custody would not necessarily have the effect of increasing contact between the two boys.

the change in Patrick's custody, the issue is not entirely moot because the trial court imposed the same schedule for Mother's visitation with Scott. Specifically, Mother urges that the provisions for mid-week and designated holiday visitation are, as a practical matter, meaningless where the non-custodial parent and child are separated by hundreds of miles. We agree.

■ Although use of a standardized schedule may be appropriate and expedient in many cases, the "Siegenthaler Schedule" was obviously designed for situations where the custodial and non-custodial parents reside in the same city. It is unrealistic to expect either the parent or the child to climb aboard an airplane every Wednesday evening and Thursday morning or on designated birthdays and single day holidays in order to take advantage of a few hours of allowed visitation, even assuming such extensive travel is within the parties' means. The wear and tear of such extensive travel would undoubtedly diminish the quality of any time spent together and may well engender deep resentment on the part of the child, the parent or both. It is also likely to interfere with the child's planned extracurricular activities, a prospect that is not necessarily presented when the child and non-custodial parent reside in the same city. Because the "Siegenthaler Schedule" was never designed for situations where the non-custodial parent and child live hundreds of miles apart, it is an abuse of discretion to employ it in those circumstances. Accordingly, we reverse the visitation provisions of the decree and remand for development and entry of a new visitation schedule for both Patrick and Scott based on their individual circumstances.

On remand, the parties should be given the opportunity to agree upon and present a new schedule for approval by the court. Absent such agreement and approval, the trial court shall develop a new schedule for visitation between the non-custodial parent and each child which is specific to that parent and child's circumstances. Each schedule should be designed to maximize quality contact between the parent and child. No scheduled visitation periods should be less than two consecutive days and no visitation requiring travel by the child should be shorter than three days. The non-custodial parent may be given the option of traveling to the child's city, at his or her own expense, for shorter visitation on designated birthdays and special occasions (e.g., confirmation, graduation, etc.). Where feasible, contact between Patrick and Scott should be maintained. The trial court shall also provide for an appropriate division of transportation costs.

Accordingly, the judgment is reversed and the cause remanded with directions to sustain Mother's motion for permission to remove Patrick from the state and for further proceedings consistent with this opinion. Costs are assessed against Respondent.

REINHARD, P.J., and GARY M. GAERTNER, J., concur.