**In the Interest of S.E.P. and M.C.P., Respondents,**

v.

**Mark PETRY, Appellant.**

**No. WD 57829.**

Missouri Court of Appeals, Western District.

Jan. 23, 2001.

Robert N. Calbi, Kansas City, for appellant.

Philip O. Willoughby, Jr., Kansas City, for respondents.

Before SMART, Presiding Judge, ELLIS, Judge and LAURA DENVIR STITH, Judge.

ELLIS, Judge.

Appellant Mark Petry ("Father") appeals from a judgment entered in the Circuit Court of Platte County, Missouri allowing Respondent Virginia Petry ("Mother") to relocate with their minor children to the state of Florida and modifying Father's visitation rights. The Court also ordered that Father and Mother equally share the costs of the appointed guardian *ad litem.*

Father and Mother were married on December 12, 1987. On May 3, 1988, the couple had a daughter, and on July 30, 1990, the couple had a son.

Sometime in 1991 or early 1992, Father filed a petition for divorce in the Circuit Court of Douglas County, Kansas. On May 26, 1992, the Circuit Court entered a Journal Entry of Divorce Decree dissolving the marriage. Pursuant to that divorce decree, Father and Mother were given joint legal custody of the children with Mother to retain primary physical custody. The Court awarded Father the following visitation:

> Friday evening to Sunday evening on alternating weekends;
>
> Two (2) months continuously in summer (not to begin until two weeks after the school year ends and ending not less than two weeks before school begins)
>
> Every Wednesday evening from 6:30 p.m. to 8:30 p.m.;
>
> Thanksgiving holiday each and every odd year;
>
> Alternating birthdays;
>
> Alternating major holidays.

According to the divorce decree, Father and Mother were to share transportation equally. The Court ordered Father to pay child support in the amount of $458 per month. This amount was reduced to $229 per month during the two months of summer visitation.

Soon after their divorce, Father and Mother both moved to the Kansas City area. When this case was filed, Mother was living in Parkville, Missouri, with the children, and Father was living in Shawnee, Kansas.

Mother works for Sprint PCS. In January of 1999, Sprint PCS began talking to Mother about relocating her to Florida and giving her a two-level promotion. Mother was promised a raise from $55,000 per year to $65,000 per year plus a bonus. Sprint PCS informed Mother that she

would not be able to move into a comparable position in the Kansas City area in the foreseeable future. Shortly thereafter, Mother informed Father that Sprint PCS had been attempting to entice her to relocate.

In March of 1999, Mother decided to accept the promotion and relocate to Florida. Mother called Father and told him that she was going to be relocating to Florida with the children.

On June 14, 1999, Mother filed a Motion to Modify Journal Entry of Divorce Decree as to Visitation in the Circuit Court of Platte County.[1] In that motion, Mother requested that she be allowed to move to Florida with the children and that the visitation schedule set forth in the original Journal Entry of Divorce be modified to accommodate that move. Mother asked the court to waive the required notice of the proposed relocation of the children's residence required by § 452.377.2 due to exigent circumstances. Mother also requested that the court inquire into the stability of Father's residence.

Also on June 14, 1999, Mother filed a Motion for Preliminary Injunction and a Motion for Temporary Restraining Order in the Circuit Court of Platte County, Missouri, asking the Court to prevent Father from exercising his visitation rights. The motions stated that Mother wanted visitation stopped because (1) on April 1, 1999, the children reported potential illegal drug use at the residence of Father, (2) the children reported being left unattended for long periods of time, and (3) the children feared for their safety while at Father's residence. Along with the Motion for Preliminary Injunction, Mother filed a Motion for Appointment of Guardian *Ad Litem* to investigate these potential problems.

On June 14, 1999, the Circuit Court entered a temporary order restraining Father from removing the children from Mother's custody. On June 30, 1999, the Circuit Court appointed a guardian *ad litem* to represent the children in the matter.

The Circuit Court conducted a hearing on Mother's motions on August 11 and 13, 1999. On August 13, 1999, the Circuit Court entered an order granting Mother permission to relocate and remove the children from the State of Missouri to the State of Florida.

On September 20, 1999, the Circuit Court entered its Judgment of Modification. The Circuit Court found that it was in the best interest of the children to allow Mother to relocate to Florida with them. In addition, the Court modified the visitation schedule contained in the original divorce decree. The Court also reduced Father's child support payments to $203 per month and ordered that the couple equally split the guardian ad litem's fees of $4,123. Father challenges this judgment on appeal.

In his first point, Father claims that the Circuit Court erred in finding that relocating the children to Florida was in their best interest. In his forth point, Father claims the trial court erred in allowing Mother to relocate to Florida with the children because the evidence established that it was in the best interest of the children to pursue counseling with Father which could not be accomplished if the children were moved. Given the similar issues involved, these two points will be addressed together.

�en Our review of the trial court's decision regarding a custodial parent's request to relocate the minor children's principle residence is governed by *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

---

1. Mother also filed a Petition for Registration of Judgment pursuant to the Uniform Child Custody Jurisdiction Act attaching the Douglas County, Kansas journal entry. That same day, the Court entered its order registering that foreign judgment.

*Sadler v. Favro,* 23 S.W.3d 253, 255 (Mo. App. W.D.2000). "We must affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Lavalle v. Lavalle,* 11 S.W.3d 640, 646 (Mo.App. E.D. 1999). Recognizing the superior position of the trial court to judge the credibility, sincerity and character of witnesses as well as other intangibles, we must view the evidence and any reasonable inferences drawn therefrom in the light most favorable to the judgment and disregard all evidence and inferences to the contrary. *Pokrzywinski v. Pokrzywinski,* 8 S.W.3d 222, 223 (Mo.App. E.D.1999). Moreover, because the trial court is presumed to have acted in the best interests of the children, the trial court's assessment regarding what serves the children's best interests will be affirmed unless this court is firmly convinced that the children's welfare requires some other disposition. *Buschardt v. Jones,* 998 S.W.2d 791, 796 (Mo.App. W.D.1999).

■ Under § 452.377.9, a party seeking to relocate with minor children bears the burden of proving that the proposed move is made in good faith and is in the best interests of the children. *Weaver v. Kelling,* 18 S.W.3d 525, 528 (Mo.App. W.D. 2000). "When determining whether to allow a parent to remove a child from the state, the paramount concern is the best interest of the child." *Newell v. Rammage,* 7 S.W.3d 517, 522 (Mo.App. W.D. 1999). Four factors are "particularly relevant" in determining the propriety of the custodial parent relocating the children to another state: (1) the prospective advantage of the move in improving the general quality of life for the custodial parent and child; (2) the integrity of the custodial parent's motives in relocating; (3) the integrity of the non-custodial parent's motives for opposing relocation and the extent to which it is intended to secure a

financial advantage with respect to continuing child support; and (4) whether there is a realistic opportunity for visitation which can provide frequent, continuing and meaningful contact for the non-relocating spouse with the child if the move is permitted. *Boling v. Dixon,* 29 S.W.3d 385, 387–88 (Mo.App. W.D.2000); *Sadler,* 23 S.W.3d at 258. In applying these factors, each case must be decided on its own particular facts, with the welfare of the child as the primary concern. *Buschardt,* 998 S.W.2d at 796.

■ With regard to the first factor, Mother presented evidence that relocating the children to Florida would substantially advance her career with Sprint PCS. The evidence reflected that if she moved to Florida, Mother would be given a "two-level up" promotion with her salary increasing from $55,000 per year to $65,000 per year plus a $10,000 signing bonus. Mother testified that, in order for her to advance in the company, she would have to relocate.

Furthermore, at the time of the hearing, Mother's current husband had accepted a new job at Firestone in Florida that would increase his yearly income from $40,000 to $45,000. In addition, his work-day will end at 3 p.m. allowing him to be home shortly after the children's school lets out.

Mother testified that they would be living in a nice, four-bedroom house in Seminole County, Florida. She further testified that the house was located in a good neighborhood. Mother presented evidence that the children would be attending high quality schools located near to the family home. The evidence clearly supports a finding that the move to Florida would increase the general quality of life for Mother and the children. This factor weighs in favor of the move.

With regard to Mother's motives in relocating, the record reflects that she did not

actively pursue a job-relocation at Sprint PCS. In fact, it appears that Mother resisted the company's initial overtures. The record reflects that Mother was eventually offered a substantial raise and promotion in order to get her to relocate. Subsequently, Mother investigated the possibility of similar advancement in Kansas City and consulted with numerous supervisors and executives within the company about that topic. Mother was told that she would not be afforded a similar opportunity in Kansas City and that it was in the best interests of her career to accept the relocation.

Mother testified that she supported the children having continued and substantial contact with Father. She stated that she supported joint counseling between Father and the children to improve their relationship. The record does not indicate that Mother was moving to Florida in an attempt to deny reasonable visitation to Father. The evidence supports a finding that Mother had good motives in attempting to relocate the children. This factor weighs in favor of the move.

We next address the integrity of Father's motives for opposing relocation and the extent to which it is intended to secure a financial advantage with respect to continuing child support. The record indicates that Father may have been at least partially motivated by finances in opposing the move. Even though Mother told him that Sprint PCS had approached her and asked her to relocate in January, Father waited to voice his opposition to the move until after Mother had accepted the job and begun making plans to move months later. Father then sought to have his child support payments reduced. At trial, Father testified that the Kansas court had reduced his child support payments in consideration for Mother being allowed to move the children to Kansas City and stated his opinion that she should bear the brunt of the children's

expenses for choosing to move to Florida. While the evidence also reflects that Father had actively taken advantage of the visitation schedule and may well have wanted the children to remain nearby, given our standard of review, we must presume Father was at least partially motivated by financial advantage in opposing the move. This factor weighs in favor of allowing Mother to move.

Our final inquiry on this point relates to whether there is a realistic opportunity for visitation which can provide frequent, continuing and meaningful contact between Father and the children if relocation is permitted. Father argues that the distance will not afford adequate visitation. Father also argues that allowing the children to move will prohibit him from attending needed counseling with the children.

■ "The cost of travel, the arrangements needed for minors to travel, whether flying or otherwise, and the time involved, are all relevant to this inquiry." *Newell,* 7 S.W.3d at 523. However, courts generally do not rule against the custodial parent on this factor. *Id.*

■ The distance involved will obviously decrease the frequency with which Father will be able to visit the children, and the travel involved will place a burden on all concerned. However, "[e]ven where removal will make visitation more difficult, a trial court may properly permit removal of the children when it is in their best interests." *Thomas v. Thomas,* 989 S.W.2d 629, 634, 635 (Mo.App. W.D.1999).

Moreover, while Father argues in a later point that Mother should be responsible for paying the travel expenses for more than three visits, neither parent has indicated that the cost of travel from Florida to Kansas City would be so prohibitively expensive so as to interfere with visitation. Furthermore, Mother has indicated a de-

sire to make sure the children have continued contact with Father. Mother even testified that Father was welcome to visit the children in Florida anytime upon reasonable notice, and such a provision was included in the trial court's visitation schedule. Father will also be afforded substantial telephone contact with the children. The "frequent, continuing and meaningful contact" can be accomplished, in part, through telephone or other contact with the non-custodial spouse. *Boling,* 29 S.W.3d at 388. The decrease in frequency of personal contact between Father and the children and the additional burdens of travel associated with the distance weigh slightly against the move.

Likewise, Father's arguments related to counseling are not particularly strong, and we must view the evidence in the light most favorable to the judgment. While he argues that allowing the move will prohibit counseling from occurring, the record supports a finding that Father had been resistant to obtaining counseling in the months prior to the judgment and could have participated in counseling prior to the move. In addition, the record does not contain any evidence which would indicate that such counseling could not take place during the children's visitation in Kansas City or during visits by Father to Florida. Furthermore, while the judgment states that overnight visitation cannot occur with Father "until a health professional has determined in writing that such overnight visitation will not be detrimental to the minor children," the judgment does not mandate counseling between Father and the children and does not state that such counseling would be in the best interests of the children. This argument simply does not carry much weight.

On the whole, the move to Florida will decrease the frequency with which Father will be able to see the children and will impose increased burdens associated with traveling a great distance upon the parties and the children. However, while the visitation schedule set forth by the trial court must be altered, as discussed *infra,* the new schedule will provide Father with visitation which, along with frequent telephone contact, will provide frequent, continuing and meaningful contact between Father and the children. This factor merely weighs slightly against allowing the move.

■■■ Considering all of the relevant factors set forth above, we find the trial court did not err in determining that the move to Florida was in the children's best interests and in allowing Mother to relocate the children.[2] "It is clear from the cases that '[i]n our highly mobile society, it is unrealistic to inflexibly confine a custodial parent to a fixed geographical area, if removal to another area for reasons such as change of employment, remarriage, etc., is consistent with the best interest of the minor children.'" *Thomas,* 989 S.W.2d at 634 (quoting *In re Marriage of Greene,* 711 S.W.2d 557, 564 (Mo.App. S.D.1986)). "'[W]here the custodial parent, who has exercised the right of custody and control in a manner conducive to the welfare and development of the children, demonstrates a need to move from the state in order to achieve employment and financial betterment which will subserve the best interest of the children, judicial permission to remove the children is warranted.'" *Butler v. Butler,* 922 S.W.2d 18, 20 (Mo.App. E.D. 1996) (quoting *Michel v. Michel,* 834 S.W.2d 773, 778 (Mo.App. S.D.1992)). Points I and IV are denied.

In his second point, Father argues that the Circuit Court erred in ordering him to

---

**2.** "Although Father directs our attention to other evidence he claims supports contrary findings, such contentions misperceive the nature and scope of our review. In reviewing the sufficiency of the evidence, we view the evidence and reasonable inferences from the evidence in the light most favorable to the judgment and disregard all contrary evidence." *Maher v. Maher,* 951 S.W.2d 669, 673 (Mo.App. E.D.1997).

pay half of the guardian ad litem fees and in making him pay for any of the travel associated with visitation. We will first address Father's claims relating to the guardian ad litem's fees.

██ Father claims that an even split of the guardian ad litem's fees is not appropriate given the disparity between the income of Father and Mother. He further argues that Mother necessitated the appointment of the guardian ad litem by petitioning for an injunction. He asserts that Mother should be responsible for the fees because no findings were ever entered by the trial court addressing her allegations and no permanent injunction was issued.

██ As provided by statute, a guardian ad litem is to be awarded a reasonable fee for his or her services, and such fees are to be set by the trial court. *Jezewak v. Jezewak*, 3 S.W.3d 860, 865 (Mo.App. E.D.1999). "The court, in its discretion, may award such fees as a judgment to be paid by any party to the proceedings or from public funds." *Id.* (citing § 452.423.4). "Judicial discretion is abused when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable people can differ about the propriety of the action taken by the trial court, it cannot be said the trial court abused its discretion." *Id.*

With regard to the disparity in income between the Father and Mother, the record reflected that Husband had reported income of $11,075 last year while Mother would be making $65,000 per year at her new job. Father asserts that this disparity mandates that Mother pay the guardian's fees. However, Father's testimony at trial reflects that he determined his own income in any given year and that he had chosen not to draw much in the way of salary so that the money could be utilized to grow his company.

Furthermore, while no permanent injunction was issued by the trial court, that motion was not pursued at trial due to an agreement reached between the parties. Father agreed to comply with the recommendation of the guardian ad litem to see a counselor with the children, and Mother indicated her willingness to accept the recommendations of the guardian ad litem and health care professionals and to respect whatever ruling the trial court issued regarding visitation. In addition, the record indicates that Mother's allegations in her motions for a temporary restraining order and for an injunction were made in good faith, and indeed, the record provides a great deal of support for those allegations.

The trial court's ruling is logical under the circumstances and is certainly not so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. The trial court did not err in ordering the parties to split the guardian ad litem's fees.

██ With regard to the trial court's assessment of travel costs, "[a] trial court has broad discretion in apportioning the expenses of visitation." *Lavalle v. Lavalle*, 11 S.W.3d 640, 649 (Mo.App. E.D. 1999). "We review such decisions 'for a manifest abuse of that discretion.'" *Id.* (quoting *Stanton v. Abbey*, 874 S.W.2d 493, 501 (Mo.App. E.D.1994)).

██ In its judgment, the trial court ordered Mother to pay the full travel costs for three visits per year to Kansas City and further ordered that Father and Mother split the cost of any other visits. In making his argument that the trial court erred in entering that order, Father relies solely on his contention that the disparity between Mother and Father's income mandates that Mother should pay

more of the travel costs associated with visitation.

The judgment rendered by the trial court indicates that the court adequately took into consideration the difference in the parties income and the fact that Mother was the party electing to move and assessed a greater portion of the travel expenses to Mother. We find no abuse of discretion, manifest or otherwise. Point denied.

In his fifth point, Father asserts that the trial court erred in holding that the children would have to spend the nights during visitation with their grandparents until Father obtained a written statement from a healthcare provider indicating that overnight visitation with Father was not detrimental to the children. Father claims that, if the need for counseling between Father and the children is not significant enough to prevent the children from relocating to Florida, the problems between Father and the children cannot be significant enough to restrict his visitation in this way.

■■■■■ Section 452.400.2, RSMo Cum. Supp.1998, addresses the modification of visitation rights and restrictions on those rights. Under that section, the court may modify a visitation order whenever such modification would serve the best interests of the child, however, "the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger the child's physical health or impair his emotional development." § 452.400.2. Before the trial court may place a restriction on the non-custodial parent's visitation, the court must make a finding that the children's emotional development will be impaired or that the children are in physical danger. *Buschardt,* 998 S.W.2d at 799. "The record must support a finding that 'the parent's conduct has had or will have an adverse impact on the child.'" *Id.* at 800 (quoting *Mobley v. Phillips,* 942

S.W.2d 399, 402 (Mo.App. W.D.1997)). When the trial court fails to make an express finding of impairment or endangerment, an appellate court may in some instances infer such a finding from the restrictions placed on the visitation. *Van Pelt v. Van Pelt,* 824 S.W.2d 135, 137 (Mo.App. W.D.1992). In this instance, since the case must be remanded, as discussed *infra,* the trial court will have an opportunity to make any necessary finding, and therefore, we need not make such an inference.

Finally, in his third point, Father asserts that the trial court abused its discretion in setting forth a visitation schedule that did not make sense in light of the geographical distance between Father and Mother. In addition to granting Mother permission to relocate the children to Florida, the trial court modified the visitation schedule contained in the original divorce decree. The Court ordered the following visitation schedule:

(a) [Father] shall have the following holiday visitation: In odd numbered years, New Year's Day, President's Day, Easter Weekend from 6:00 p.m. Friday through 6:00 p.m. Sunday, Fourth of July, Christmas Eve from 9:00 a.m.–6:00 p.m., Memorial Day Weekend from 6:00 p.m. Friday–6:00 p.m. Monday; In even numbered years, Christmas day from 9:00 a.m.–6:00 p.m., Labor Day Weekend from 6:00 p.m. Friday through 6:00 p.m. Monday, and Halloween 6:00 p.m.–8:00 p.m;

(b) Holiday visitation supercedes regular visitation;

(c) One-half of the total days the minor children are out of school when the children are out school [sic] for more than seven (7) consecutive days. (Christmas break, Spring break, summer break, etc.) Said visitation will occur in Shawnee, Kansas.

(d) [Mother] will transport the children three times to Kansas City International Airport or [Father]'s residence to provide [Father] the aforementioned visitation.

(e) If the children are out of school for more than three consecutive seven (7) day periods and [Father] desires additional visitation, the parties shall each pay one-half of the transportation costs to transport the children to Kansas City International Airport.

(f) [Mother] shall make the children available by phone on Wednesday and Sunday evenings for [Father] to visit with the children by phone, and if [Father] has occasion to be in Florida, he is to receive reasonable visitation with the minor children while there.

(g) When the children are in the Kansas City area to exercise visitation with [Father], they shall spend one-half their nights with [Mother]'s parents and one-half their nights with [Father]'s parents, and are not permitted overnight visitation with [Father] in his residence until a health professional has determined in writing that such overnight visitation will not be detrimental to the minor children.

Father argues that this schedule provides visitation that is too short in length and too burdensome given the geographic distance between Father and the children.

"Section 452.400.2 RSMo Cum.Supp.1997 provides that a court 'may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child.'" *Lavalle*, 11 S.W.3d at 648. The trial court has broad discretion in addressing visitation issues, and we afford the trial court's decision on those issues great deference. *Id.* "We will not overturn the decision of the trial court unless father has demon-strated the judgment is not in the children's best interests." *McElroy*, 910 S.W.2d 798, 805 (Mo.App. E.D.1995).

In this case, Father has met that burden. "[W]hen a child is distant from a parent, a scheduled visitation period should not be less than two consecutive days and no visitation requiring travel by the child should be shorter than three days." *Lavalle*, 11 S.W.3d at 648. "It is unrealistic to expect either the parent or the child to climb aboard an airplane ... on designated birthdays and single day holidays in order to take advantage of a few hours of allowed visitation, even assuming such extensive travel is within the parties' means." *Riley v. Riley*, 904 S.W.2d 272, 279 (Mo.App. E.D.1995). "The travel required of the parties to exercise visitation compared to the limited time each would have to enjoy the other's company 'would undoubtedly diminish the quality of any time spent together and may well engender deep resentment on the part of the child, the parent or both.'" *McElroy*, 910 S.W.2d at 805 (quoting *Riley*, 904 at 279).

The visitation schedule issued by the trial court provides for numerous periods of visitation of two days or less. Indeed, many of the holiday visitation periods awarded to Father are for a single days, and some of the visitation periods are for periods of as little as two to nine hours. Although the schedule does not specifically say so, this visitation is presumably to occur at Father's residence, given the provision in the order which allows Father visitation anytime he is visiting in Florida. The schedule devised by the Trial Court is unreasonable given the distance involved and cannot be deemed to be in the children's best interest. The Trial Court abused its discretion in entering its visitation order.

Accordingly, we must reverse and remand the case to the trial court to issue a new visitation schedule. On remand, the parties should be afforded a chance to agree upon and present a new schedule to the court. *Riley*, 904 S.W.2d at 279. If

the parties are unable to reach an agreement regarding the visitation schedule, the trial court shall develop a new schedule for visitation between Father and each child that is specific to that child's circumstances. *Id.*

In devising this schedule, "[w]e advise the trial court to take into consideration the distance between the parties and the time spent traveling from one parent to the other, the opportunity for visitation posed by the children's extended school breaks and three-day weekends, as well as the children's weekend activities in developing the new schedule." *McElroy*, 910 S.W.2d at 805. "In devising a realistic visitation for a parent and child located in distant cities, factors such as minimizing travel by both the parent and child, assuring that the length of scheduled visits is sufficient to permit meaningful time together and maintaining sufficient frequency of visitation to maintain the parental bond clearly take precedence over desirable but subordinate concerns such as equal division of holidays and other significant days." *Maher v. Maher*, 951 S.W.2d 669, 677 (Mo.App. E.D.1997). "No scheduled visitation periods should be less than two consecutive days and no visitation requiring travel by the child should be shorter than three days." *Riley*, 904 S.W.2d at 279. Finally, "[i]t is simply unrealistic to expect that visitation between a parent and child separated by more that 1000 miles can be of the same frequency or duration as may have been feasible when they were located in the same city," and requiring the children to travel from Florida to Kansas City ten or more times per year would be an excessive amount of travel. *Maher*, 951 S.W.2d at 676.

The judgment is reversed and remanded to the Circuit Court for further proceedings consistent with this opinion.

All concur.